UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:10-CV-00186-R

STEPHEN W. YOUNG, et al.                                              PLAINTIFFS

v.

STOCK YARD FARM &
DAIRY SUPPLY INC., et al.                                             DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiffs' Motion to Remand (DN 11). Defendants have responded (DN 13; DN 14) and Plaintiffs have replied (DN 15). This motion is now ripe for adjudication. For the reasons that follow, Plaintiffs' Motion is DENIED. Defendant Stock Yard Farm & Dairy Supply Inc. is dismissed from this action without prejudice.

## BACKGROUND

Plaintiffs Stephen W. Young, Pamela Young, Paul Young, and Betty Young (the "Youngs"), d/b/a Double YY Farms, bring this action against Defendants Stock Yard Farm & Dairy Supply, Inc. ("Stock Yard") and Safeway Industries, Inc. ("Safeway") (collectively "Defendants"). The Youngs jointly own and operate Double YY Farms in Decide, Kentucky, a dairy farm with a large cattle herd. Stock Yard is a dairy supply business and a Kentucky corporation, principally located in Louisville, Kentucky. Safeway is a manufacturer of dairy sanitation products, incorporated under the laws of Wisconsin with Milwaukee as its principal place of business.

In the Verified First Amended Complaint ("Complaint"), Plaintiffs allege that they

1

purchased from Stock Yard an IODIP teat dip (the "dip"),[1] manufactured by Safeway.  DN 1-2 at 6-10.  Plaintiffs claim that after applying the dip to their herd, a great number of their cows suffered complications, in particular scabbing on their teats.  The Complaint goes on to allege that the dip caused an infection amongst the cows, which resulted in the death of eight and the forced sale, at a loss, of many more.

On November 19, 2010, Plaintiffs brought this action in the Clinton Circuit Court alleging against the Defendants the state-law claims of negligence, breach of warranty, and products liability.  On December 22 of the same year, Safeway filed a Notice of Removal with this Court.  DN 1.  In it, Safeway declared that Stock Yard had been fraudulently joined in this action and therefore removal under 28 U.S.C. § 1332 and 28 U.S.C. § 1441 was appropriate.  Plaintiffs have now filed a motion to remand, arguing that there is a reasonable basis on which the Court could determine that state law would impose liability upon Stock Yard.  *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 941 (6th Cir. 1994).

**STANDARD**

When an action is removed on the basis of diversity, a court must determine whether "'all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation.'"  *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999) (citation omitted).  The "party 'seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction.'"  *Id.* at 493 (citation omitted).  Moreover, "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds."  *Id.*  In the Sixth Circuit,

---

[1] Teat dip is a sterile solution applied to the teats of a cow's utter for sanitation purposes both before and after they are milked.

the test for fraudulent joinder is applicable in three situations: (1) where there is no colorable basis for a claim against the non-diverse defendant; (2) when a plaintiff engages in outright fraud in pleading jurisdiction allegations; and (3) when a plaintiff joins a defendant who does not share joint, several, or alternative liability with a diverse defendant, nor a nexus of connectivity between the claims. *Jerome-Duncan, Inc. v. Auto-by-Tel, LLC*, 176 F.3d 904 (6th Cir. 1999). Finally, "all doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 492.

## ANALYSIS

In support of this action's removal, Safeway states that relief for the Plaintiffs' against Stock Yard is barred because KRS § 411.340, otherwise known as the "middleman" statute, "generally immunizes a distributor . . . from liability based on any product claim if the manufacturer is subject to the jurisdiction of [a] Court." DN 14 at 3. As Plaintiffs may not bring this action against Stock Yard, Safeway posits that the parties in this matter are diverse and thus removal to federal court is appropriate.[2] For their part, Plaintiffs argue that although the middleman statute may indeed protect certain distributors of products, Stock Yard's actions in this matter falls into one of two exceptions explicitly detailed in the statute. Accordingly, they aver that there is a colorable basis for a claim against Stock Yard, the parties to this litigation are not diverse, and thus remand to the state court is appropriate. *See Jerome-Duncan, Inc.*, 176 F.3d at 907 (with a colorable claim under state law, remand is appropriate).

Kentucky's middleman statute was "designed to protect only those distributors,

---

[2] Of course, 28 U.S.C. § 1332(a) requires complete diversity and more than $75,000 in controversy. While no documents before the Court discuss in detail the economic harm Plaintiffs claim to have suffered, it would appear that such an amount is in issue.

wholesalers, or retailers, who have no independent responsibility for the design or manufacture of a product." *West v. KKI, L.L.C.*, 300 S.W.3d 184, 192 (Ky. Ct. App. 2008). The statute sets forth the following protections for distributors like Stock Yard:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

KRS § 411.340. In examining the statute, Judge Hood in the Eastern District of Kentucky described its portions as well as its pertinent exceptions:

> As for the requisite predicates, there are two: (1) the manufacturer must be identified and subject to the Court's jurisdiction, and (2) the product sold by the wholesaler, distributor or retailer must have been unaltered from its original manufactured condition. As for the exceptions, the statute makes clear that its protective shield is inapplicable in two instances: (1) *where the wholesaler, distributor or retailer breached an express warranty*, or (2) where the wholesaler, distributor or retailer knew or should have known at the time of distribution or sale that the product was in a defective condition and unreasonably dangerous.

*Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 551 (E.D. Ky. 2001) (citing KRS § 411.340) (emphasis added).

Plaintiffs agree that if Stock Yard was able to seek protection under this statute, it would be immune from liability; however, they put forward two arguments why the express warranty exception applies to this case. First, Plaintiffs charge that as they have specifically alleged this exception to the middleman statute in their Complaint, there exists a colorable claim against Stock Yard and thus remand is appropriate. DN 11-1 at 4-5. Next, Plaintiffs have attached to

4

this motion a photograph of the dip manufactured by Safeway. In the photograph, they point to a label attached to the dip ("Label") that states the following: "IMPORTANT: IODIP™ has been tested and is effective for its intended use." DN 11-3; DN 14-2. Prominently above this phase, between two cow heads, is Stock Yard's name. DN 14-2. Plaintiffs claim that the Label's language, in conjunction with its affixed name, represents an express warranty by Stock Yard that the dip "is effective for its intended use." Defendants strenuously oppose these two contentions, first stating that Plaintiffs's Complaint does not contain sufficient allegations to demonstrate a proper claim for breach of warranty. In addition, they offer that the Label for the dip was not manufactured by Stock Yard, but instead made and placed on the dip's container by Safeway. Defendants thus declare that if the language of the Label should be construed as a warranty, then whatever promises the Label may contain are directly attributable to Safeway and not Stock Yard.

Express warranties created in Kentucky are governed by section 355.2-313 of the state's code. It says that a seller may create an express warranty by:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise [;] (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description [;] (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

KRS § 355.2-313(1)(a)-(c). Typically, whether a seller created an express warranty is an issue for the trier of fact, the test being "whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment." *Overstreet v.*

*Norden Laboratories, Inc.*, 669 F.2d 1286, 1290-91 (6th Cir. 1982) (applying Kentucky law) (citations omitted). However, alleging the simple existence of an express warranty is insufficient to establish a breach of that warranty; rather, the warranty must be "'part of the basis of the bargain' between the parties." *Id*. at 1291 (quoting KRS § 355.2-313(1)(a)).

Regarding Defendants' first argument, they urge that Plaintiffs have not sufficiently pled a breach of express warranty, and thus there is no possibility that Plaintiff can prevail on this claim. In describing the requirements for alleging a breach of warranty claim, the Kentucky Supreme Court has said that "a complaint which alleges facts showing positive representations by the defendant, upon which the plaintiff relied, sufficiently states a cause for breach of warranty even though it does not appear from the pleading whether an express or implied warranty is relied upon." *King v. Ohio Val. Terminix Co.*, 214 S.W.2d 993, 996 (Ky. 1948). This tracks rulings in a number of other states that require a claim of breach of express warranty to specifically allege reliance on the seller's promise. *See e.g.*, *Gelber v. Stryker Corp.*, No. 09 Civ. 1322, 2010 WL 4740432, at *6 (S.D.N.Y. Sept. 14, 2010) (applying New York law); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1140 (N.D. Cal. 2010) (applying California law); *Johnson v. Brown & Williamson Tobacco Corp.*, 122 F. Supp. 2d 194, 206 (D. Mass. 2000) (applying Massachusetts law).

Paragraph thirteen of Plaintiff's Complaint alleges only that "[t]he Defendants breached all warranties owed to the Plaintiffs, including but not limited to fitness for general and specific purposes." DN 1-2 at 8. Plaintiffs also cite breach of warranty as a basis for the relief requested. *Id*. at 9. They do not however describe the events surrounding the sale or denote any particular statements or facts upon which they relied in purchasing the dip. Accordingly, even resolving all

factual allegations in favor of remand, the current complaint would not past muster under the standard set out in *King* for stating a recoverable claim for breach of express warranty.

The Court may also draw upon language from Judge Hood's opinion in *Salisbury*, another decision interpreting the middleman statute in the context of a motion to remand. 166 F. Supp. 2d at 546. There, plaintiffs sued the manufacturer of OxyContin and a number of pharmacies that sold the drug on a variety of legal claims. *Id*. at 548. When the manufacturer sought to remove the action from state court, it claimed that the pharmacy-defendants were protected under Kentucky's middleman statute, and thereby fraudulently joined. *Id*. Although the Plaintiff had not expressly cited a claim for breach of express warranty against the defendant-pharmacies, Judge Hood elaborated on what would be necessary to prevail on a motion to remand:

> For one, plaintiffs provide no indication at all as to what language they assert to amount to an express warranty. What's more, they do not aver that the pharmacy defendants, and not the [manufacturers], provided the alleged warranty. Most critically, however, plaintiffs do not allege that they relied on defendants' warranty, proof of which is a fundamental requirement for recovery under any express warranty theory. . . . Absent any allegation of reliance, plaintiffs have no claim for breach of express warranty.

*Id*. at 552 (internal citations and footnotes omitted). The Court finds *Salisbury* to be both procedurally and factually analogous to the matter at hand. In their Complaint, Plaintiffs have neglected to include the language of the express warranty or how they relied upon the claimed warranty in purchasing the dip. As the majority of the facts and allegations necessary for the Court to find a sustainable claim for breach of express warranty are absent, this cause of action is not colorable. Stock Yard is thereby not amenable to suit under the middleman statute's exception and its dismissal from this action is a proper. Consequently, the matter's removal to

7

federal court is appropriate.

As Plaintiffs have failed to properly plead an express breach of warranty claim against Stock Yard in the Complaint, the Court does not examine the other bases offered by Defendants in opposition to this motion.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Remand (DN 11) is HEREBY ORDERED DENIED. In addition, Defendant Stock Yard Farm & Dairy Supply Inc. is ORDERED dismissed from the current action without prejudice.